[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On January 22, 1992, peace officers assigned to the Statewide Narcotics Task Force executed a search warrant at the first floor of 36 Kossuth Street in New Haven. The officers seized numerous items of personal property including $15,490.00 in cash. At that place and time the officers also arrested the defendant, Ramon Ortiz, and charged him with stealing a firearm, in violation of General Statutes 53a-212, and with interference with the execution of a search warrant, in violation of General Statutes54-33d.
On February 6, 1992, the defendant, with his attorney, appeared before this court. The prosecuting authority advised the court that he had decided to enter a nolle prosequi with respect to both charges against the defendant. The prosecutor also stated that the state and the defendant were agreed that the personal property seized in the search could be returned to the rightful owner. The name of the "rightful owner" was not stated. The court noted the entry of the nolles but neither orally nor in writing did it render any order with respect to the seized property.
On February 24, 1992, the state filed a petition pursuant to General Statutes 54-36h,[1] alleging that the monies seized in the search were related to the illegal sale or exchange of controlled substances. The petition, which is in the nature of an in rem proceeding, seeks the forfeiture of those moneys to the state. On February 26, 1992, the defendant filed a motion for return of the seized moneys.
In oral argument before the court, counsel for the defendant represented that the motion was made on behalf of the claimed CT Page 2702 owners of the moneys, Haydee Ortiz and Leo Cadio Nieves, as well as on behalf of the defendant. While the motion purports only to be made by "[t]he defendant", the court indicated during oral argument that, no claim of prejudice being made by the state, the court would entertain the motion as being made by Nieves and Haydee Ortiz. While it would have been preferable for a substitute motion to have been filed "[w]e will not exalt form over substance." State v. Tuszynski, 23 Conn. App. 201, 205,579 A.2d 1100 (1990); see In re Marriage of Pratt, 32 Wash. App. 665,649 P.2d 141, 144 (1982), reversed on other grounds, Pratt v. Pratt, 99 Wash.2d 905, 665 P.2d 400 (1983). Further the court recognizes the defendant's attorney as now also appearing for the claimed owners. See Beardsley v. Beardsley, 144 Conn. 725, 730,137 A.2d 752 (1957).
The court finds that the movant Haydee Ortiz has standing to maintain this motion. "Standing involves a question of legal status. `It is a fundamental concept of judicial administration . . . that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity.' Bassett v. Desmond,140 Conn. 426, 430, 101 A.2d 294 (1953); Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541, 549, 427 A.2d 822
(1980)." State v. Nardini, 187 Conn. 109, 112-113, 445, A.2d 304 (1982). In its petition for a forfeiture, of which the court takes judicial notice; State v. Bunkley, 202 Conn. 629, 648,572 A.2d 795 (1987); the state admits that Haydee Ortiz is an owner of or appears to have an interest in the moneys seized. In addition, that movant credibly testified that she is the owner of $600.00 of the moneys seized. Since one of the movants has standing, it is unnecessary for the court to determine whether the other movant also has standing. Nowicki v. Planning Zoning Board, 148 Conn. 492,495, 172 A.2d 386 (1961); DeRito v. Zoning Board of Appeals,18 Conn. App. 99, 103, 556 A.2d 632 (1989).
The gravamen of the motion is that on February 6, 1992, when the defendant's case was nolled, "the presiding Judge ordered the funds to be returned to the rightful owner. . . ." The court has had the court reporter's notes of the February 6, 1992 proceeding recited by the reporter in the presence of counsel and has examined the subsequently prepared transcript of those proceedings. Additionally, the court has examined the court's file in this case. Neither orally nor in writing did the court, on February 6, 1992 or thereafter, order that the moneys be returned to anyone. The transcript of proceedings in this case that day reflects only the following:
 "MR. RICHARDS [assistant state's attorney]: Ramon Ortiz, lines 92 and 93, represented by CT Page 2703 Atty. Levy. Mr. Levy spoke with Atty. Palombo. She indicated that she was going to enter a nole in this case. The state enters a nolle based up Atty. Palombo's representation.
 "MR. LEVY [defendant's attorney]: Your Honor, there was a substantial amount of money taken in this case. This is not a drug case.
 "MR. RICHARDS: The state has no objection to the return of the money and believes that was the agreement between the parties.
 MR. LEVY: That's correct. I have the rightful owners here. I don't know if their names are even in the files. I don't know how we can prove to the police who the rightful owners are. I can put their names on the record.
 "THE CLERK: Excuse me, there is no inventory in the file. I don't have an inventory.
"THE COURT: All right, a nolle is noted."
At the hearing of this motion, counsel for the movants argued that, in light of the agreement between the state and the defendant on the record of February 6, 1992, the court intended to and would have, as a matter of course, entered an order that the moneys be returned to the owner or owners thereof but for the absence from the court's file at the time of the inventory of seized property. This is accurate.
Firstly, General Statutes 54-36a(c) provides that "[u]nless such seized property is stolen property and is ordered returned pursuant to subsection (b) of this section or unless such seized property is adjudicated a nuisance in accordance with section 54-33g, or unless the court finds that such property shall be forfeited or is contraband, or finds that such property is a controlled drug, a controlled substance or drug paraphernalia as defined in subdivision (8), (9) or (20) of section 21a-240, it shall, at the final disposition of the criminal action or as soon thereafter as is practical, or, if there is no criminal action, at any time upon motion of the prosecuting official of such court, order the return of such property to its owner within six months upon proper claim therefor." (Emphasis added). A nolle prosequi is a final disposition of a criminal action; State v. Lloyd,185 Conn. 199, 201, 440 A.2d 867 (1981); Practice Book 727; and by employing the word "shall", the Legislature intended that this subsection of the statute be mandatory. Graham v. Zimmerman, 181 Conn. 367, CT Page 2704 371, 435 A.2d 996 (1980). "`"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience."'" Rowe v. Godou, 12 Conn. App. 538,542, 532 A.2d 978 (1987), reversed in part on other grounds, 209 Conn. 273, 550 A.2d 1073 (1988). While this court expresses no opinion as to whether the six-month time period prescribed by the statute is mandatory or directory; cf. State v. One 1976 Chevrolet Van, 19 Conn. App. 195, 199 (1989); the return of property to its owner is clearly "the essence of the thing to be accomplished" by General Statutes 54-36a(c).
Secondly, and more fundamentally, in addition to the formal record, a trial judge may rely upon his personal recollection in determining whether to enter an order nunc pro tunc. Wood v. Griffin Brand of McAllen, 671 S.W.2d 125, 131 (Tex.App. 1984). "A presumption arises that his recollection, when relied upon, supports the finding of clerical error" warranting the entry of such an order. Ibid.; but see Kooyenga v. Hertz Equipment Rentals, 79 Ill. App.3d 1051, 35 Ill. Dec. 382, 399 N.E.2d 216,220 (1979). In light of the transcript of the earlier proceedings, quoted supra, evidencing the agreement of the defendant and the state that the moneys be returned to the owner, it is this judge's personal recollection that he would have endorsed such an order on the form listing the inventory, JD-CR-52 Rev. 9-89, had that document been presented to this judge at the time of the nolle or at any time until the state filed its petition.
A judgment or order is rendered when the judge officially announces his decision either orally in open court or by a writing filed with the clerk. Brown v. Cray, 88 Conn. 141, 146,89 A. 1123 (1914); Hull v. Thoms, 82 Conn. 386, 391, 73 A. 793 (1909). However, it was only by the mistake or omission of the court that an order to return the seized moneys to the owner or owners thereof did not enter at or about the time that the nolle prosequie was noted. Such a mistake or omission should not nullify either substantive or procedural rights. Cf. Kron v. Thelen, 178 Conn. 189, 197, 423 A.2d 857 (1979). In such a case the court may enter judgment nunc pro tunc. ""`The underlying principle on which judgments nunc pro tunc are sustained is that such action is necessary in furtherance of justice and in order to save a party from unjust prejudice. . . caused by the acts of the court or the course of judicial procedure. In other words, the practice is intended merely to make sure that one shall not suffer for an event which he could not avoid." In re Finks, 224 F. 92, 93 [6th Cir. 1915].' Ireland v. Connecticut Co., 112 Conn. 452,454, 152 A. 614." Gary Excavating Co. v. North Haven,163 Conn. 428, 430, 311 A.2d 90 (1972). CT Page 2705
"A nunc pro tunc order is a retroactive entry by the court. It is effective at the date which the court states it is to be effective, not at the date it was made." Wexler v. Goldstein,146 Cal.App.2d 410, 304 P.2d 41, 42
(1956); see 49 C.J.S., Judgments, 121. One court has aptly stated that "this power of the court should be used sparingly and only when the right of the moving party to ask it is crystal clear." Karpuk v. Karpuk,177 Misc. 729,31 N.Y.S.2d 769, 770 (1941); see 49 C.J.S., Judgments, 118, page 249; 46 Am.Jur.2d, Judgments, 192. Moreover, there is authority that "relief by entry nunc pro tunc will not be granted where the failure to enter the judgment at the proper time was due to the party's own carelessness or negligence." 49 C.J.S., Judgments, 118, page 249.
This court does not decide whether an order nunc pro tunc would otherwise be "`"in furtherance of justice"'"; Gary Excavating Co. v. North Haven, supra; or be "mandated by public policy consideration." Pratt v. Pratt, 99 Wash.2d 905, 665 P.2d 400,401 (1983). "Nunc pro tunc means `now for then' and when applied to the entry of a legal order or judgment it normally does not refer to a new or fresh (de novo) decision. . . but relates to a ruling or action actually previously made or done but concerning which for some reason the record thereof is defective or omitted." Becker v. King, 307 So.2d 855, 859 (Fla.App. 1975), appeal dismissed, 317 So.2d 76 (Fla. 1975); see 49 C.J.S., Judgments, 117. "[T]he true function of a nunc pro tunc order is to make the record speak the truth relative to the judgment or order." Hawks v. MCormack, 180 Okla. 569, 71 P.2d 724, 725 (1937). Even if this court were to grant the motion before it, it could only do now what it intended to do when it noted the entry of a nolle prosequi, that is, "order the return of such property to its owner within six months upon proper claim therefor." General Statutes54-36a(c).[2] Since the identity of the owner or owners was not stipulated to by the state, on the record, at the time the nolle prosequi was noted, nor were the names of these movants even before the court at that time, the court did not then, and cannot now, nunc pro tunc, order that the moneys be returned to a specific, identifiable owner.
It remains to be determined whether the motion, otherwise than nunc pro tunc, should be granted.
Until "proper claim" has been made for the seized moneys, they remain "in custodia legis subject to the jurisdiction and control of the court." Pickett v. Marucci's Liquor, 112 Conn. 169,179, 151 A. 526 (1930) (emphasis in original). While those seized moneys have been in custody of the court, the state has timely filed a forfeiture petition "[n]ot later than ninety days after the seizure of [those] moneys" as provided in General CT Page 2706 Statutes 54-36h(b). Such a forfeiture proceeding is separate and independent from the criminal action. State v. Kaufman,201 N.W.2d 722, 724 (Iowa 1972). General Statutes 54-36h(b) further states that the nature of the forfeiture proceeding is "in rem". "Jurisdiction in rem is predicated on the `fiction of convenience' that an item of property is a person against whom suits can be filed and judgments entered." United States v. Ten Thousand Dollars in United States Currency, 860 F.2d 1511, 1513 (9th Cir. 1988). "`A proceeding in rem is essentially a proceeding to determine the right in specific property, against all the world, equally binding on everyone.' 1 Am.Jur.2d, Actions, 40. Conceptually, `in rem' jurisdiction is based upon a court's control over a `res' rather than a defendant as a person." Hayes v. Smith, 194 Conn. 52, 64, 480 A.2d 425 (1984); see Pennington v. Fourth National Bank, 243 U.S. 269, 272, 37 S.Ct. 282, 233,61 L.Ed. 713 (1917); United States v. One 1983 Homemade Vessel Named Barracuda, 858 F.2d 643, 647 (11th Cir. 1988); United States v. One Lear Jet Aircraft, 836 F.2d 1571, 1573 (11th Cir. 1988) (en banc), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844,101 L.Ed.2d 881 (1988). "Jurisdiction in an in rem action therefore generally ends with removal of the res." United States v. $29,959.00 U.S. Currency, 931 F.2d 549, 551 (9th Cir. 1991); see United States v. Certain Real and Personal Property, 943 F.2d 1292, 1294-95 (11th Cir. 1991); United States v. Four Parcels of Real Property,941 F.2d 1428, 1435 (11th Cir. 1991). "The only exception to the rule occurs when the res is released accidentally, fraudulently or improperly." United States v. $57,480.05 United States Currency,722 F.2d 1457, 1458 (9th Cir. 1984); see e.g. Baca v. Minier,229 Cal.App.3d 1253, 280 Cal.Rptr. 810 (1991).
The State was not required to seek a forfeiture in the criminal action pursuant to General Statutes 54-36a but, rather, could choose to proceed, as it has, in a separate civil action pursuant to General Statutes 54-36h. State ex rel. Haas v. One 1965 Fort Auto, 19 Or. App. 879, 529 P.2d 410, 411 (1974); The Harbour Trade, 42 F.2d 858, 859-860 (2d Cir. 1930); United States v. Story, 294 F. 517, 519-520 (5th Cir. 1923). More, the State has done so timely, filing its petition "[n]ot later than ninety days after the seizure of [the] moneys" as required by General Statutes 54-36h(b). That subsection provides for a plenary proceeding which "shall be deemed a civil suit in equity, in which the state shall have the burden of providing all material facts by clear and convincing evidence. The court shall identify the owner of said moneys or property and any other person as appears to have an interest therein, and order the state to give notice to such owner and any interested person by certified or registered mail, and shall promptly, but not less than two weeks after notice, hold a hearing on the petition. . . . At such hearing the court shall hear evidence and make findings of fact and enter conclusions of law and shall issue a final order, from which the parties shall CT Page 2707 have such right of appeal as from a decree in equity." Where such a forfeiture petition has been timely filed all disputed issues pertaining to the res should be adjudicated in that plenary proceeding; In Re App. $48,900 Dollars In U.S. Currency, 432 So.2d 1382,1385 n. 6 (Fla.App. 1983); rather than in a summary proceeding such as this, raised merely by a motion and arising out of the criminal action. Cf. Aponte v. Rivera, 2 Conn. Cir. 337, 342,199 A.2d 182, 183 (App.Div. 1963). It follows that in these circumstances the court should not grant a motion in the criminal action which would divest it of jurisdiction in the independent forfeiture proceeding.
Finally, while not employing the words "waiver" or "estoppel", the movants in their post-hearing memorandum have essentially argued that the state has waived, or should be estopped from petitioning the court for a forfeiture of the seized moneys pursuant to General Statutes 54-36h. Cf. Kimberly-Clark Corporation v. Dubro, 204 Conn. 137, 145-148, 527 A.2d 679 (1987). It necessarily follows from the foregoing discussion that these are matters which cannot be adjudicated in this proceeding. Moreover, since the forfeiture proceeding not only is plenary but equitable in nature, it is especially well suited for the resolution of such claims. See Canfield v. Gregory, 66 Conn. 9,17, 33 A. 536 (1895). "Resort to equity is appropriate both to avoid a multiplicity of actions at law; Dimmock v. New London,157 Conn. 9, 19, 245 A.2d 569 (1968); Hammerberg v. Leinert, 132 Conn. 596,602, 46 A.2d 420 (1946); and to provide effective, convenient, direct and complete relief." Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 482, 447 A.2d 1 (1982).
The motion is denied.
BRUCE L. LEVIN, JUDGE
FOOTNOTES