# MICHAEL G. ECONOMOS ET AL. *v.* LILJEDAHL BROTHERS, INC.
## (AC 24877)

Foti, Pellegrino and Dupont, Js.

Argued October 19—officially released December 21, 2004

*David R. Clemens*, with whom, on the brief, was *James H. Lee*, for the appellant (defendant).

*Anita M. Varunes*, for the appellees (plaintiffs).

*Opinion*

FOTI, J. The defendant, Liljedahl Brothers, Inc., appeals from the judgment of the trial court granting the application of the plaintiffs, Michael G. Economos and Bessie Economos, to vacate an arbitration award. On appeal, the defendant claims that the court improperly failed to confirm the arbitration award. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history, as found in the record and in the court's memorandum of decision, are relevant to our resolution of the defendant's appeal. On April 3, 2000, the parties entered into a home improvement contract in which the defendant agreed to renovate a bathroom and laundry room in the home of the plaintiffs. On September 15, 2000, the parties entered into a second home improvement contract in which the defendant agreed to remodel a kitchen and add a den to the plaintiffs' house. Under the terms of each contract, any controversy arising out of the contracts was to be settled by arbitration.

Subsequently, a dispute arose between the parties, and the defendant filed a demand for arbitration and a mechanic's lien on the plaintiffs' house. The plaintiffs responded by filing an answer, special defenses and an amended counterclaim. On December 17, 2001, the plaintiffs filed a motion for summary judgment, which was denied. Following the arbitration hearing, which encompassed nine days of testimony, the arbitrator awarded the defendant $81,890.24 and the plaintiffs $30,423.69 for a net award of $51,466.55 for the defen-

dant. The award concluded: "This award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied." Subsequently, the arbitrator died, and the parties were referred to the court system by the American Arbitration Association for the resolution of any outstanding issues.

On October 23, 2002, the plaintiffs, pursuant to General Statutes §§ 52-418 and 52-419, filed an application to vacate or to modify the arbitration award, claiming that the arbitrator "acted with evident partiality or corruption," refused to hear pertinent evidence and exceeded his powers. On November 7, 2002, the defendant, pursuant to General Statutes § 52-417, filed a motion to confirm the arbitration award and for an award of postarbitration interest. Following a hearing on the parties' motions, the court denied the defendant's motion to confirm the arbitration award and vacated the award because it failed to address three of the claims raised by the plaintiffs. This appeal followed.

On appeal, the defendant claims that the court improperly (1) denied its motion to confirm the arbitrator's award and (2) vacated the arbitrator's award. In response, the plaintiffs counter that the court properly vacated the arbitrator's award and denied the defendant's motion to confirm the award because the award (1) did not conform to the submission, (2) violated public policy and (3) was an "egregious application of the law . . . ."

"We begin by noting that Connecticut has adopted a clear public policy in favor of arbitrating disputes. The policy is expressed in General Statutes § 52-408, which provides in relevant part: An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or

out of the failure or refusal to perform the whole or any part thereof . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." (Internal quotation marks omitted.) *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 71, 856 A.2d 364 (2004).

"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 271 Conn. 127, 134, 855 A.2d 964 (2004). "Unless the submission provides otherwise, an arbitrator has authority to decide factual and legal questions, and courts will not review the evidence, or, where the submission is unrestricted, the arbitrator's determination of legal questions." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 153–54, 523 A.2d 1271 (1987).

It is undisputed that the submission to arbitration in this case was unrestricted and voluntary. Accordingly, both parties agree that our review is limited to a deter-

mination of whether the award conforms to the submission. The parties, however, dispute what constituted the submission to arbitration. The defendant claims that the submission is contained in the arbitration clause of the contracts.[1] Conversely, the plaintiffs claim that the submission is not contained in the contracts, but rather is found in their motion for summary judgment, namely, whether the defendant "could wilfully abandon the contract entered into by the parties and still recover for the value of its work," and the plaintiffs' amended counterclaim. We agree with the defendant.

In *Garrity* v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992), our Supreme Court rejected an argument similar to that raised by the plaintiffs in this case. In *Garrity*, the defendant claimed that the submission was not contained in the arbitration clause of the contract, which contained language nearly identical to that in the contracts in the present case. Id., 12. Rather, it was the defendant's claim in *Garrity* that the submission "was limited to the pleadings in the lawsuit antecedent to the arbitration . . . ." Id. Our Supreme Court rejected that argument, holding that the submission to arbitration was that contained in the contract. Id.

"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, *the arbitration clause in the contract is a written submission to arbitration. . . .* This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings." (Citations omitted; emphasis

---

[1] Each contract contained the following identical language: "Arbitration—Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

added.) *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 451, 435 A.2d 993 (1980); see *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 229, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). Accordingly, in this case, the submission is not, as the plaintiffs contend, contained in the pleadings. Rather, the submission to arbitration is contained in the parties' contracts. See *AFSCME, Counsel 4, Local 704* v. *Dept. of Public Health*, 80 Conn. App. 1, 5, 832 A.2d 106, cert. granted on other grounds, 267 Conn. 908, 840 A.2d 1170 (2003).

Having concluded that the unrestricted submission to arbitration was contained in the language of the parties' contracts, we will now address whether the arbitrator's award conformed to that submission. We conclude that the award conformed to the submission.

The submission to arbitration provided: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." The arbitrator's award of damages to both the defendant and the plaintiffs clearly conformed to the broad language of the submission. Accordingly, the court improperly vacated the arbitration award and improperly denied the defendant's motion to confirm the award.

The arguments raised by the plaintiffs in support of the court's decision are without merit. The plaintiffs first contend that the court properly vacated the award because it did not conform to the submission, as the arbitrator's memorandum "did not address several questions set forth in the parties' submissions." Initially, we reiterate that the submission was the clause con-

tained in the parties' contracts, not the claims raised by the plaintiffs in their counterclaim and motion for summary judgment. The contents of the arbitrator's memorandum, however, are irrelevant to a resolution of whether an award conforms to the submission. "It is . . . the award rather than the finding and conclusions of fact [that] controls and, ordinarily, the memorandum of an arbitrator is irrelevant. . . . Furthermore, [i]f the submission is unrestricted, [as is the case here] an arbitrator is not required to decide the issues presented according to law. . . . Thus, [w]here the submission does not otherwise state, the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the [arbitrator] was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the [arbitrator's] decision of the legal questions involved." (Citations omitted; internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, supra, 59 Conn. App. 233. Regardless, the arbitration award specifically stated that the award was in full settlement of *all* claims and counterclaims submitted for arbitration.

The plaintiffs' argument that the court properly vacated the arbitrator's award because it was an egregious application of the law is similarly misplaced. "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should

be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity*, [our Supreme Court] adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel*, 65 Conn. App. 425, 438–39, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001).

The plaintiffs contend that the court, in vacating the arbitrator's award, properly applied the test that our Supreme Court adopted in *Garrity*. Nowhere in the

court's memorandum of decision, however, is the test enunciated in *Garrity* discussed. Rather, the court denied the defendant's motion to confirm the arbitration award and vacated the award without mentioning any legal authority. Applying the *Garrity* test to the facts of this case, however, it would have been improper for the court to have vacated the arbitrator's award on the ground that the arbitrator manifestly disregarded the law because the first two elements of the *Garrity* test cannot be met.

It is the plaintiffs' claim that the first prong of the *Garrity* test was met because the arbitrator awarded the defendant damages on the basis of a threat of dismissal and the arbitrator's failure to address the submission of the parties. Neither claim represents an error "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." Id., 439. (Internal quotation marks omitted.) As we have stated: "[C]ourts will not review the evidence . . . ." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 3144* v. *New Haven*, 81 Conn. App. 532, 536, 840 A.2d 1205, cert. denied, 268 Conn. 924, 848 A.2d 472 (2004). It is therefore inappropriate for a court to search the evidence presented to an arbitrator to determine if the arbitrator's factual findings are correct. The plaintiffs' claim that the arbitrator failed to address the submission of the parties is based on their contention that the submission was contained in the pleadings they subsequently filed and not in the clause in the parties' contracts, a contention we already have rejected.

The plaintiffs have also failed to meet the second prong of the *Garrity* test because they are unable to establish that the arbitrator appreciated the existence of a clearly governing legal principle but ignored it. The plaintiffs contend merely that that award, on its face, "reflects that the arbitrator appreciated the existence

of the governing principle of contracts, but decided to ignore it." There is nothing, however, on the face of the arbitration award to support the plaintiffs' contention.[2]

The judgment is reversed and the case is remanded with direction to deny the plaintiffs' application to vacate the arbitration award, to grant the defendant's motion to confirm the arbitrator's award and to consider the defendant's claim for postarbitration award interest.

In this opinion the other judges concurred.

---

[2] The plaintiffs also claimed that the court properly vacated the award because the award violated public policy. In their application to vacate or to modify the arbitration award, the plaintiffs claimed: "The basis for this application is that the sole arbitrator of this controversy . . . acted with evident partiality or corruption on the rendering of the award. Further, the arbitrator refused to hear evidence pertinent and material to the controversy. Finally, the arbitrator exceeded his powers or has so imperfectly executed them that a mutual, final and a definite award upon the subject matter has not been made." At no point did the plaintiffs claim that the award violated public policy. Furthermore, nowhere in the court's memorandum of decision did the court discuss any public policy implications of the arbitrator's award. Because the claim was not raised before the trial court, we will not address it here. See *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214 n.8, 618 A.2d 25 (1992).